Meyer Shaier, Respondent, *v.* The Broadway Improvement Company, Appellant.

*Negligence — sufficient proof that injuries are likely to be permanent — a verdict not set aside for questions asked, which the court directed the counsel not to ask and the jury to disregard.*

In an action to recover damages for personal injuries caused by the alleged negligence of the defendant, proof that, as the result of the accident, the plaintiff was confined to a hospital for nineteen days; that from that time to the time of the trial, a period of two years, he was under the care of a physician at home, and that during all of this time he suffered constant pain and was unable to work at his trade as a carpenter, coupled with testimony tending to show that one of the processes of one of his vertebra had been fractured; that his muscles were soft and atrophied, indicating a chronic irritation affecting the spinal cord, which would render him unable to work at his trade, warrants the jury in finding that the injury will continue, and justifies them in awarding to the plaintiff compensation for such a future condition, although no medical testimony as to the permanency of the injuries was given upon the trial.

Van Brunt, P. J., and O'Brien, J., dissented.

A verdict, rendered in favor of the plaintiff in such an action, will not be set aside because an expert, appointed by the court to examine the plaintiff before trial, who had testified upon cross-examination that he expected to be paid for his services, was asked by the plaintiff whether his services were not to be paid for by a certain insurance company, and, notwithstanding the fact that the court instructed the counsel not to mention the insurance company again, and instructed the jury to disregard the statement contained in the question, the counsel subsequently asked the witness whether he had not been retained by the insurance company, when the jury were again instructed by the court to disregard such statement.

Appeal by the defendant, The Broadway Improvement Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of February, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 2d day of February, 1897, denying the defendant's motion for a new trial made upon the minutes. .

The action was brought to recover damages for personal injuries resulting to the plaintiff because of the alleged negligence of the defendant's elevatorman in the management of the elevator.

*Charles C. Nadal*, for the appellant.

*Sumner B. Stiles*, for the respondent.

INGRAHAM, J.:

This case seems to have been tried with care and the question fairly submitted to the jury. The main question of fact litigated upon the trial was as to the circumstances under which Murphy, the elevatorman, started the elevator which caused the injury; and the question as to the defendant's negligence was submitted to the jury, the charge of the court on this subject not being objected to by the defendant.

The appellant presents but two grounds for reversal. The first relates to the charge of the court as to damages. The court charged in respect to damages that if the jury found for the plaintiff " it should be such a sum as will cover damages that have necessarily flown from the injury and such as appears from the evidence, with reasonable certainty, are prospective, or may hereafter be sustained by the plaintiff." There is no intimation here that there was any evidence that the plaintiff had sustained any permanent injury. What the jury were authorized to do was to allow compensation for the injury that had been sustained up to the trial, and for such consequences as with reasonable certainty would follow from the injury. The case was tried on the 29th of January, 1897. The plaintiff was injured on the 19th of December, 1894. Thus, over two years had elapsed from the time of the injury down to the time of the trial. The plaintiff testified that he had not been able to do anything at any time since the accident occurred.

He testified: " It always pains me in the back when I lean forward. The elevator caught me at the middle of the back; the small of the back." Dr. Conway, a physician of large experience, was called by the plaintiff, and testified that he had examined the plaintiff on January twenty-sixth, three days before the trial. He found that the plaintiff " had marked local tenderness along his spinal column, from the eighth or ninth dorsal vertebra down to the third lumbar." The doctor further testified that he saw a depression in the back, just about the center of the loin, in which the plaintiff complained of tenderness; that in his opinion one of the spinous processes of one of the vertebræ had been fractured; that the plaintiff's muscles were soft and atrophied. The witness further testified that the fracture of the spinous process of the vertebræ " is merely the fracture of the tip that opens backwards and downwards

and makes, as a rule, in the normal condition, a slight projection. If that was fractured it would naturally develop to one side or the other or downward, depending upon the spot. The fracture of that part of the vertebræ is not likely to produce a protrusion, nor make some part of the bone rise." He further testified: "An injury sufficient to produce a fracture of the spinous process is certainly a severe blow, and consequently has the effect of having tenderness above and below it, showing there is chronic irritation. It affects the spinal cord, and if the cord is affected it disables him, more or less, to do the work of a carpenter, according as the irritation is more or less."

We have thus a case of a man suffering from a severe injury to his back, confined to a hospital about nineteen days, then under the care of a physician at home for two years, from the time of the accident to the time of the trial, suffering constant pain, with inability to work, with evidence tending to show that one of the processes of one of the vertebra had been fractured, his muscles soft and atrophied, evidence tending to show a chronic irritation, affecting the spinal cord, which would render him unable to work at his trade ; that this condition had existed for two years, and that at the time of the trial the plaintiff had not been able to resume work at his trade.

It seems to me that this was evidence from which the jury could find that the accident had caused an injury which would continue. It had continued for two years. The pain and inability to work existed at the time of the trial, and if, from hearing the description of the condition of the plaintiff and the testimony of the physician, the jury were satisfied that that condition would continue in the future, I think they were justified in awarding to the plaintiff a sum of money to compensate him for such a future condition.

Where a limb has been cut off or an eye put out, the jury have a reasonably certain basis upon which to calculate the future damage that will follow from the injury. But where the result of the injury involves continued pain, or inability to work, from the nature of the case the continuance of such pain or inability is speculative and uncertain. The jury were justified in believing that this plaintiff had the pain at the time of the trial, and that he was then and had been for two years unable to work ; that his spinal cord

was affected, and that an affection of the spinal cord disabled him from doing the work of a carpenter. There was no certainty as to how long that would continue, nor could it be definitely ascertained from the nature of the injury. The only thing in addition that the plaintiff could have shown was the opinion of the physician as to how long such a condition would last; and an examination of the medical testimony in this case, I think, demonstrates that such an opinion would have aided the jury very little in determining the question. Certainly it would take some time to cure the pain and restore the wasted muscle, and it was for the jury to consider the nature of the injury, the nature of the condition testified to, and thus to award what they considered to be a reasonable compensation for the period that the evidence satisfied them this condition would continue. This was what the judge charged. If the defendant had wished to have the question more fully presented to the jury as to the absence of evidence to show that the pain would be permanent, it could have presented the question in a request to charge, but I do not think that there was any error in the charge as made under the circumstances of this case.

The other point presented by the appellant is as to the conduct of counsel in referring to an insurance company in his question to the witness. The record contained but two references to this insurance company, and they are contained in the questions asked Dr. Wyeth upon cross-examination. Dr. Wyeth had been appointed by the court to examine the plaintiff before trial. His report was introduced in evidence. He was subsequently called and examined as to the condition of the plaintiff. He stated upon cross-examination that he expected to be paid for giving his testimony, and counsel for the plaintiff then asked him whether that payment was to be by the defendant or by the insurance company. That question was objected to, and, after some conversation between the counsel and the court, it was withdrawn, and the court instructed counsel for plaintiff not to say anything more about the insurance company. In violation of this instruction the counsel then asked the witness whether or not he had been retained by the lawyers of the Casualty and Fidelity Company in the case, and to that the witness answered that he had not heard of the company in the case. The court again

stated that it could not comprehend what the insurance company had to do with it, and the jury were instructed not to regard any statement contained in the question at all.

Here was a witness who had testified that he had expected to be paid as an expert witness. It certainly was not error to ask him by whom he was to be paid; and while the counsel had no right to disregard the instruction of the court and refer to the insurance company after the court had directed him not to, the mere fact that he asked a question of a witness as to who was to compensate him for his expert testimony, whether it was the defendant or some other person, was certainly not such legal error as would justify us in reversing the judgment, or justify the court in allowing a juror to be withdrawn. The court did all that it was bound to do to protect the defendant. The jury were instructed not to regard it, and the witness swore positively that he knew nothing of the insurance company. There was no statement made to the jury that as a fact this insurance company had anything to do with the case, nor does it appear that this statement did as a fact influence the jury, and it would be a severe reflection upon the integrity and intelligence of this jury for us to assume that because such a question was asked they disregarded the sworn testimony of the witness and, in violation of the express direction of the court, assumed that the insurance company was interested in the case and allowed such an inference to affect their verdict.

I do not think that upon this record we would be justified in ordering a new trial, and the judgment should be affirmed.

RUMSEY and PATTERSON, JJ., concurred; VAN BRUNT, P. J., and O'BRIEN, J., dissented, on the ground that there is no basis for a recovery for permanent injuries.

Judgment affirmed, with costs.